Boyce *v.* Schroeder.

## BOYCE *v.* SCHROEDER.

[No. 2,328.  Filed October 11, 1898.]

MASTER AND SERVANT.—*Negligence in Furnishing Defective Tool.—Complaint.*—In an action by a servant against the master for damages resulting from a defective implement furnished, it is not necessary to allege that the plaintiff carefully examined the implement before proceeding to use it.  *p. 31.*

SAME.—*Negligence.—Special Verdict.*—In an action against the proprietor of a lumber yard for damages for injuries sustained by plaintiff employe while driving a team hitched to a lumber truck, a special verdict found that the injury was caused by the breaking of

a linchpin; that the pin had been greatly worn by constant use, which worn condition could not be seen on account of the dirt and grease covering it and the outer portion of the hub; that it was no part of the plaintiff's duty to inspect the truck; and that the defendant had used the truck in his yard for nearly two years prior to the time of plaintiff's injury, and had made no inspection thereof. *Held,* that the defendant was liable. *pp. 31-35.*

INSTRUCTIONS.—*Special Verdict.*—*Practice.*—The giving of instructions as to the law of the case is improper in cases where the jury has been ordered to return a special verdict, and the action of the court in giving or refusing to give such instructions is not reversible error. *p. 36.*

From the Laporte Superior Court. *Affirmed.*

*James F. Gallaher* and *Harry B. Tuthill,* for appellant.

*M. T. Krueger, C. R. Collins* and *J. B. Collins,* for appellee.

HENLEY, C. J.—The original complaint in this cause was filed in the Laporte Circuit Court on the 9th day of April, 1891, and the trial of the cause which resulted in the judgment from which this appeal is prosecuted was had at the November term, 1895, of the Laporte Superior Court. The amended complaint upon which the cause went to trial was in two paragraphs. The first paragraph alleged in substance that on the 30th day of April, 1889, the appellee was employed by appellant to work in and about appellant's lumber yard. That he was employed to operate what is commonly called a lumber "squill," which is a two-wheeled truck, pulled by a team of horses, and used to transport lumber from place to place; that about the said 30th day of April, 1889, appellee while at work in the proper discharge of his duties, driving a team of horses, which was hitched to and hauling the said truck loaded with lumber, and while appellee was so driving as aforesaid, "the truck broke; that is to say, that the pin or key which holds and keeps the wheel

on the axle was old, and worn out and became broken, thereby permitting the wheel and axle to become separated, and thereby causing the aforesaid truck and the lumber piled thereon to fall, and causing the lumber which was piled on said truck as aforesaid to fall on the plaintiff, whereby one of his legs was broken and otherwise greatly injured." That appellee had no authority, and it was not his duty, to examine or repair said truck, but that his duty was to hitch his horses to the loaded truck, and to drive said horses with said load to the place where said lumber was to be stacked or loaded onto cars. That the breaking of said pin or key was caused by the defective and unsafe condition of said truck, which was unsafe for use, and worn out, which condition was known to appellant, who negligently and carelessly used said truck in his business, but that the condition of said truck was unknown to the appellee. The general allegations as to the negligence of appellant and appellee's freedom from fault are found in the complaint, which concludes with a demand for judgment in the sum of $1,999. The second paragraph of complaint differs from the first in but one respect. It counts on the appellant's implied knowledge of the defect which caused the injury by reason of the length of time the truck had been out of order. Appellant demurred to each paragraph of complaint, which was overruled, and the cause was put at issue by a general denial. There was a trial by jury, and a special verdict returned, which is in the form of interrogatories and answers, as is provided by the act of the General Assembly of 1895, in relation to special verdicts. Both parties to the action moved for judgment upon the special verdict. The motion of appellee was sustained, and that of appellant overruled. Appel-

lant moved for a new trial, which was denied. The errors assigned in this court are:

(1) That the court erred in overruling the demurrer of appellant to the first paragraph of complaint; (2) that the court erred in overruling the demurrer of appellant to the second paragraph of complaint; (3) that the court erred in sustaining appellee's motion for judgment on the special verdict; (4) that the court erred in overruling appellant's motion for judgment on the special verdict; (5) that the court erred in overruling appellant's motion for a new trial.

Counsel attack both paragraphs of complaint, and argue the question from the standpoint that appellee's injury must have occurred from the risks and dangers naturally incident to his employment; that the complaint does not show that appellee was without knowledge of the danger of the business in which he was engaged, etc. The complaint clearly proceeds upon the theory that appellant's liability arises from the facts that he placed worn-out and defective tools in the hands of appellee, his servant, and that such defects were known to the master, and unknown to the servant. It was not necessary that the complaint aver that appellee carefully examined the truck before proceeding to use it, because, when the master places an implement in the hands of the servant, he, the master, impliedly undertakes that it is sound and fit for the use for which it is intended, and that he will exercise ordinary care and prudence to keep it in such condition. We think both paragraphs of complaint stated a cause of action, and that the court did not err in overruling the demurrer thereto.

In this case the jury was required to answer two hundred and fifty-three interrogatories. It was found by the jury that appellant, in the year 1889 operated and maintained a lumber yard in the city of Michigan

City, Indiana, and employed in such work between fifty and 100 men, and used in such work between thirty and fifty two-wheeled trucks or "squills;" that appellee was employed to work in said appellant's lumber yard, and that his duties were to drive the horses which hauled the trucks which were used in moving lumber from place to place; that the lumber was placed on said truck by other employes, called "pilers;" that appellee was on the 30th day of April, 1889, engaged as aforesaid, in driving a team of horses attached to a loaded truck, when the truck broke down; that the truck was loaded with about one thousand feet of lumber, which was the ordinary load for a truck; that appellee was driving on the road ordinarily used to drive upon in hauling lumber from place to place where the truck was loaded to the place where he was directed to take it; that the roadway was plank, and it was necessary, in driving a horse attached to a loaded truck, that the driver should walk closely alongside the truck, and to hold the lines in one hand, and place the other hand on the lumber on the truck, to aid in guiding the truck; that appellee was driving in the manner last described when the accident occurred; that no particular truck was used by appellee, but it was the practice of the man whose duty it was to load the trucks to take any truck that might be handy to load upon, and the men whose duty it was to hitch to and drive the horses attached to the loaded trucks took them as they were loaded; that the truck which broke down and caused appellee's injury was hitched to in the usual course of the business, and was driven by appellee along said roadway in a slow and careful manner, and, while so driving said truck, it broke down, and the lumber fell upon appellee, and caused the injury for which he maintains this action for damages.

It was further found by the jury that appellee was in full possession of his mental faculties, and good eyesight and hearing, and that the accident occurred in the daytime; that the accident was caused by the breaking of the pin which was used to keep the wheel on the axle; that the key had become greatly worn by constant use, and by being rubbed by the hub of the wheel; that the said pin was covered with oil, grease, and dirt, and the condition of said pin could have been seen if the oil, grease, and dirt had been removed; that the appellant had used said truck in his lumber yard for nearly two years prior to the time appellee was injured, and at no time had either the appellant himself or any one in his behalf made any inspection of said truck or pin; that the oil, grease, and dirt covered the pin and the outer portions of the hub of said truck to such an extent that appellee could not see that said pin was nearly worn off; that appellee had no knowledge of the worn and unsafe condition of said pin, and that the accident was wholly the result of the defective, worn, and unsafe condition of said pin; that appellee "looked over" the truck after he had hitched the horse to it, and before he started with the load; that the truck was furnished appellee by appellant for appellee's use in hauling lumber; that appellant owned said truck, and that he made no effort to keep said truck in repair; that the pin which held the wheel in place was made of material which with constant use would wear away; that said truck was in constant use; that it was no part of appellee's duty to inspect or look over the truck, or any part thereof; and that he was entirely ignorant of the worn and defective condition of the pin which held the truck wheel in place, and at the time of the accident was acting in obedience to the direction of

appellant, and in the line of his (appellee's) duty. The jury also found fully the extent and character of appellee's injury, and they further found that appellee at all times, and under all the facts and circumstances, as found by the verdict, used that degree of prudence and caution that an ordinarily prudent man would have used under similar circumstances.

Whether or not the latter finding would be authorized in this case is immaterial, as the facts found are full and clear and were sufficient upon which the court could, as a matter of law, adjudge appellant guilty of negligence, and appellee free from fault. The facts found, we think, bring the case squarely within the law as stated in the recent case of *Baltimore, etc., R. Co. v. Amos,* 20 Ind. App. 378, where it was said: "It is the duty of a master who employs a servant to work with tools furnished by the former to exercise ordinary care and diligence, in providing such tools, to furnish tools which will be safe for the servant in the use thereof about the master's business pursuant to the contract of employment. It is also the master's duty toward the servant to exercise a reasonable supervision over such tools and to exercise ordinary care to keep them in safe condition for the use of the servant. He cannot devest himself of responsibility by delegating the performance of such duties to agents or other servants.

"The master is required to take notice not only of the deterioration of the tools and appliances by continued use, but also of such deterioration by natural or ordinary decay as may be discovered by reasonable inspection, in any material which may be provided by him as tools or as parts thereof. The servant has a right to rely upon the master's observance of these requirements and performance of these duties. The servant impliedly assumes the risk ordinarily and naturally

incident to the particular service in which he voluntarily engages as a servant, and he is bound to exercise ordinary care for his own safety in the use of the implements so provided. If he is injured because of his own want of such care he cannot recover of the master because of contributory fault; and if he is injured, though without want of due care on his part, yet without any failure of the master to perform such duties on his part, the injury is to be regarded as one the risk of which was assumed by the servant. But the duty of inspection does not lie equally upon the master and servant; for the servant has the right to assume that the master has so performed his duty that the servant may rely upon the safety of such implements provided by the master unless their defectiveness is open to the observation of ordinarily prudent men; in which case the servant cannot so rely upon their safety, and if he voluntarily continues to use them in such condition, he assumes the additional risk. The implied undertaking of the master is, not that the implement is absolutely free from danger in its uses, but that according to its kind it is sound and fit for the use to which it is to be put, so far as ordinary care and prudence can discover, and that he will exercise ordinary care and prudence to keep it in such condition. These legal propositions are so elementary and are so often stated in substance in the reported decisions of our own State, that this repetition of them may seem unnecessary." Applying the law, as stated, to the facts as found by the special verdict in this cause could lead to but one conclusion. The lower court did not err in sustaining appellee's motion for judgment upon the special verdict, and did not err in overruling the motion of the appellant for judgment in his favor.

It is also argued by counsel for appellant that the

lower court erred in giving certain instructions, and in refusing to give certain other instructions. Waiving the claim of appellee's counsel that the instructions are not properly in the record, it has been repeatedly held that the giving of instructions generally as to the law of the case is improper in cases where the jury has been ordered to return a special verdict, and the action of the court in giving or refusing to give such instructions is not reversible error. *Woollen* v. *Wire*, 110 Ind. 251; *Town of Kentland* v. *Hagan*, 17 Ind. App. 1; *Board, etc.,* v. *Bonebrake*, 146 Ind. 311.

There is evidence in the record which supports every material allegation of the complaint. We find no error. Judgment affirmed.