## Hoffman v. Zollman et al.

[No. 7,572. Filed March 15, 1912.]

1. Municipal Corporations.—*Improvement Resolution.—Foreclosure of Assessment Lien.—Complaint.*—A complaint to foreclose an assessment lien for street improvements sufficiently shows the adoption of the resolution for such improvements pursuant to §8710 Burns 1908, Acts 1905 p. 286, where it is alleged that the common council adopted a declaratory resolution providing for the improvement of the street therein named, with full details, drawings and specifications for said work which were then on file in the office of the city civil engineer. p. 666.

2. Municipal Corporations.—*Improvement Assessments.—Abutting and Adjacent Property.*—Property bordering on the street to be improved shall be assessed primarily without regard to the depth of the same, but upon the final hearing before the council as to actual benefits to abutting and adjacent property, the council shall have the power to assess other property back of the first lot, if such lot is less in depth than one hundred and fifty feet from the line of the street to be improved, as provided in §8714 Burns 1908, §109, Acts 1905 p. 289. p. 669.

3. Railroads.— *Condemnation Proceedings.— Easement.— Interest Acquired by Prescription.*—It is the settled law of this state that a railroad company by condemnation proceedings for a right of way acquires only an easement in the land appropriated, and necessarily it can acquire no greater interest by prescription. p. 670.

4. ADVERSE POSSESSION.—*Presumption of Grant.—Confined to Land Held.*—The rule is that holding for more than twenty years raises the presumption of a grant, but such presumption is confined to the land actually held. p. 670.

5. RAILROADS.—*Right of Way.—Prescription.—Extent of Claim.*—Ordinarily there is no user by a railroad company beyond the user for the purposes of a right of way, and its prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences. p. 670.

6. EASEMENTS.—*Nature of Estate.*—An easement in land implies the existence of two tenements—a dominant tenement, to which the right is appurtenant, and a servient tenement over or in which the right is enjoyed, and the owner of the dominant tenement has no rights in the servient tenement except such as are incident to the enjoyment of his easement. p. 671.

7. EASEMENTS.—*Easement by Prescription.—Owner of Servient Tenement.—Duties.*—Where an easement arises by prescription, the duties imposed upon the owner of the servient tenement are passive and negative—to suffer the owner of the dominant tenement to enjoy his easement, and to allow him to enter and repair, and also to refrain from doing any act upon his own premises which would interfere with the enjoyment of the easement. p. 671.

8. MUNICIPAL CORPORATIONS.—*Public Improvements.—Special Benefits.—Determination Conclusive.—Railroad Right of Way.—Servient Estate.*—The common council may assess the easement of a railroad company for public improvements but if it fails so to do the presumption is that the easement was not benefited, and its action, pursuant to notice to the owners, in determining that the servient estate is specially benefited is conclusive and cannot be interposed as a defense to an action to foreclose a lien for such assessment. p. 671.

From Lawrence Circuit Court; *Robert W. Miers*, Special Judge.

Suit by Fred Hoffman against Samuel T. Zollman, Anna C. Zollman, Meda Blackwell and Milton G. Blackwell. From a judgment for defendants, plaintiff appeals. *Reversed.*

*William H. Martin, Henry P. Pearson*, for appellant.
*McHenry Owen, Robert N. Palmer*, for appellees.

ADAMS, J.—Appellant, on August 22, 1905, was awarded a contract for paving a part of J street in the city of Bedford, and subsequently completed the work to the satisfac-

tion of, and it was accepted by, the common council of said city. At the time of awarding the contract, and at the time the cost and expenses of the improvement were assessed against the property benefited thereby, appellees held the legal title to the north half of lot No. 100 in the original plat of the city of Bedford, having a frontage of ninety feet on J street, and extending back for a distance of ninety-three feet.

This action was commenced by appellant to foreclose the lien, which he claimed to hold against said north half of lot No. 100, for $527.25, as shown by the final assessment roll.

The complaint was in one paragraph, to which appellees filed a demurrer, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and appellees excepted, and have again challenged the sufficiency thereof by an assignment of cross-error in this court.

The only point urged by appellees is that the complaint does not show the adoption of the declaratory resolution by a two-thirds vote of the common council of the city 1.  of Bedford. Counsel for appellees insist that the resolution must be so passed, in order to confer on the common council jurisdiction to proceed with the improvement, and that if not so passed, all subsequent steps taken are void. This would doubtless be true, under the law of 1889 (Acts 1889 p. 234), known as the Barrett law, but the improvement in question was made pursuant to the act of April 15, 1905 (Acts 1905 p. 219, §8710 Burns 1908), which provides that "whenever the board of public works [common council] shall order the improvement of any street, alley, sidewalk, or other public place in such city, in whole or in part, it shall adopt a resolution to that effect, setting forth a description of the place to be improved, and full details, drawings and specifications for such work." The complaint alleges that "heretofore, on July 18, 1905,

the common council of the city of Bedford adopted a declaratory resolution providing for the improvement of J street in said city, from the north line of Seventeenth street to the north line of Thirteenth street in said city, with full details, drawings and specifications for said work, which were then on file in the office of the city civil engineer for said common council of the city of Bedford.'' The common plaint was clearly sufficient, and there was no error in overruling the demurrer thereto.

Appellees answered the complaint by general denial, and by two paragraphs of special answer. Demurrers were overruled to the special answers, and error is predicated on such ruling by appellant. In the second paragraph of answer, appellees aver that an assessment against their property amounting to $527.25 is excessive and confiscatory, and deprives them of property, without due process of law, and denies to them the equal protection of the law, in violation of the 14th amendment of the federal Constitution, and in violation of article 1, §21, of the Constitution of Indiana. There is no merit in appellees' contention that their constitutional rights have been invaded. The same question was presented in the well-considered case of *Dawson v. Hipskind* (1909), 173 Ind. 216, and decided adversely to appellees' claim.

As the controlling questions presented by the record arise on the overruling of the motion for a new trial, it is unnecessary further to discuss or directly to pass on the sufficiency of the second and third paragraphs of answer.

The court found the facts specially, and stated conclusions of law, on which facts and conclusions judgment for costs was rendered in favor of appellees. The overruling of the motion for a new trial, which appellant assigns as error, and relies on for reversal, calls in question the sufficiency of the evidence to sustain the findings.

The evidence is largely uncontroverted, and shows that

appellees have a fee simple record title to the entire north half of lot No. 100. It also appears that the Chicago, Indianapolis and Louisville Railway Company and its predecessors have for more than forty years been operating a railroad over the east part of said lot, and at the time the improvement was made it had a main track, a side-track, and two switch tracks thereon; that the west switch track is fifty-four feet and six inches west of the east line of said lot at the north end thereof, and twenty-seven feet west of said east line at the south end thereof; that whatever right or title the railway company has in said real estate was acquired by use and occupancy, and not by conveyance or proceedings in condemnation; that the railway company has never owned nor erected any buildings thereon, and that said strip has been used for operating trains, and sometimes cars have been left standing on the switch tracks; that less than twenty years ago, one Gainey, who then had the record title to the real estate in question, owned a temporary structure located on said strip, where grain, fertilizer and other freight was unloaded, but that said structure has long since been removed. It is also undisputed that the city has complied with the law authorizing the improvement, by giving all required notices to property owners, and that none of the defendants has signed any waiver of irregularities in said proceeding; that appellant did not know before bringing his action that appellees claimed that the east part of said lot was owned by the railway company, or that said company ever claimed to own it or have any interest therein, but he did know that the company was using and occupying the east part of said lot, as herein set out.

It is insisted by appellant that the sixth finding of the court is not sustained by sufficient evidence and is contrary to the evidence. By this finding, the court found that on the east part of lot No. 100, as herein described, the railway company has for more than forty years kept and main-

tained four railroad tracks, and has continuously and adversely used and occupied said strip of land "for the purpose of a right of way, main line of railway track, and for switches, sidetracks, railway cars and engines, and for the purpose of unloading coal, grain and other freight hauled and unloaded by said railway company;" that said company has been in complete possession, occupancy and control of the east part of said lot for more than forty years, and it is now in the possession of, occupied by, and under the control of the Chicago, Indianapolis and Louisville Railway Company, and is the only real estate belonging to said company, except its right of way, which abuts on, or is adjacent to, J street; that said abutting part of the railway company's real estate was not assessed in any sum for said improvement, and, in addition thereto, the common council of the city of Bedford entered into an agreement with said company, whereby the city agreed that it would not assess or charge said company anything on account of the improvement of J street; that the part of said lot in the possession of and occupancy by the railway company lies between J street and the part which is now owned and possessed by appellees.

Appellees' theory is that the assessment against their property is *ultra vires,* as it is not abutting property, and that where abutting property is not assessed, property immediately adjacent cannot be legally assessed. This would be true under the act of 1889, *supra,* wherein it was provided that abutting property must be held primarily liable for the assessment, and that back property could not be reached and made liable unless the amount realized from the sale of abutting property was insufficient to pay the assessment. This, however, is not true under the act of 1905, *supra,* which provides that property bordering

2. on the street to be improved shall be assessed primarily, without regard to its depth; but on the final

hearing before the council as to actual benefits to abutting and adjacent property, the council shall have the power to assess other property back of the first lot, if such lot is less in depth than 150 feet from the line of the street to be improved, as provided in §8714 Burns 1908, Acts 1905 p. 289.

But we think the controlling question in this case is, What prescriptive rights did the railway company acquire in the east part of the lot in controversy? It is the settled
3. law of this State that a railroad company by condemnation proceedings for a right of way acquires only an easement in the land appropriated. *Cleveland, etc., R. Co.* v. *Doan* (1911), 47 Ind. App. 322; *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529; *Cincinnati, etc., R. Co.* v. *Geisel* (1889), 119 Ind. 77; *Quick* v. *Taylor* (1888), 113 Ind. 540.

If a railroad company acquires only an easement in land by condemnation proceedings, it must necessarily follow that it could secure no greater interest by prescrip-
4. tion. The rule is that holding for more than twenty years raises the presumption of a grant, but such presumption is confined to the land actually held. *Chicago, etc., R. Co.* v. *Johnson* (1910), 45 Ind. App. 162, 169; *Indianapolis, etc., R. Co.* v. *Reynolds* (1888), 116 Ind. 356, 360.

Where land is acquired by adverse possession, its width is limited to that occupied by the company during the pre-
scriptive period. 23 Am. and Eng. Ency. Law 702.
5. A prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences. Ordinarily there is no user by a railroad company beyond a user for the purposes of a right of way. *Consumers Gas Co.* v. *American Plate Glass Co.* (1904), 162 Ind. 393, 396.

An easement in lands implies the existence of two tenements—a dominant tenement, to which the right is appur-

tenant, and a servient tenement, over or in which the
6. right is enjoyed. The owner of the dominant tene-
ment has no rights in the servient tenement except
such as are incident to the enjoyment of his easement. And
where an easement arises by prescription, the duties
7. imposed on the owner of the servient tenement are
passive and negative—to suffer the owner of the dom-
inant tenement to enjoy his easement, and to allow him to
enter and amend and repair, and also to refrain from doing
any act on his own premises which would interfere with the
enjoyment of the easement. *Perry* v. *Pennsylvania R. Co.*
(1893), 55 N. J. L. 178, 26 Atl. 829; *Johnson* v. *Hyde*
(1881), 33 N. J. Eq. 632; Goddard, Easements (5th ed.) 15.

It appears from the evidence, without contradiction, that
there was a triangular strip of land between the west line
of J street and the east end of the ties of the main track of
the railway company, twelve feet, six inches, wide at the
north line, and extending south a distance of sixty-six feet.
It also appears that there were open spaces of varying
widths between the other tracks. There was no proof of
adverse user of this land, except as to that part covered by
the rails and ties of the company, and, therefore, the rail-
way company did not acquire more than a prescriptive
easement in that part actually used by it for more than
twenty years. But, notwithstanding the easement of the
railway company, appellees had a fee simple title to the lot in
controversy, their estate, however, being servient as to that
part covered by the easement. Whether this servient
8. estate was specially benefited or not was a matter
conclusively determined by the common council, pur-
suant to notice to appellees, and was a matter which could
not, by express statutory enactment, be interposed as a
defense in an action of this kind.

That the easement of the railway company might have
been assessed by the common council, if benefited, was de-

cided by this court in the case of *Indianapolis, etc., R. Co.* v. *Capitol Pav., etc., Co.* (1900), 24 Ind. App. 114, 116. If the easement was not assessed, the presumption is that it was not benefited, but in no event could the question of special benefits be urged as a defense in an action to foreclose an improvement lien. §8714 Burns 1908, Acts 1905 p. 290.

The finding of the court, that the part of the lot abutting on the improved street, and under the complete control and occupancy of the railway company, was not assessed in any sum for the improvement, was not supported by the evidence, and the decision of the court based on such finding was contrary to law.

The judgment is therefore reversed, with instructions to the trial court to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.

Hottel, J., not participating.