LYNCH *v.* KECK

[No. 568A87.   Filed October 21, 1970.]

*William Espenscheid,* of Mt. Vernon, *D. Bailey Merrill, Merrill, Schroeder & Johnson,* of Evansville, for appellants.

*F. Richard Hawley, Clements, McClellan & Hawley,* of Mt. Vernon, *Rabb Emison, Emison & Emison,* of Vincennes, for appellee.

PER CURIAM.—This is an appeal from the Posey Circuit Court wherein the plaintiff-appellee filed his complaint against defendants-appellants, in three pleading paragraphs, in which relief was prayed for the following:

(1) recovery of balance owed by appellants on a contract;

(2) recovery of value of dirt removed from appellee's land;

(3) lateral support to an embankment adjoining appellee's land.

Appellants filed an answer denying all material allegations of the complaint in accordance with Rule 1-3 of the Rules of the Supreme Court of Indiana.

The cause, thus being at issue, was tried to the court.

The court entered judgment for the appellee, awarded damages in the amount of $470.12 for the value of the dirt removed from appellee's land, and ordered the appellants and their successors in title to maintain and keep in good repair a certain easement adjoining appellee's land.

Appellants filed a motion for new trial alleging as error, in substance, the following:

1. Error in several particulars in the assessment of the amount of recovery;

2. The decision of the court is not sustained by sufficient evidence in several particulars;

3. The decision of the court is contrary to law in several particulars;

4. Various errors of law occurring at the trial.

The facts of this case are that appellee owns real estate in the City of Mount Vernon, Indiana. Appellants own real estate adjoining that of the appellee. Appellants planned to build an apartment house on their land and wanted to use a strip of land on appellee's property as an entrance to their apartment parking lot.

A dispute arose between the parties as to whether this strip of land was a public or a private alleyway. On May 2, 1966, this matter was brought before the City Council of Mount Vernon. The appellants requested that the city open this alley as a public alleyway; appellee contended that this strip of land was owned by him and that the city should not open it. A resolution, which would have made the land in question a public alleyway, was defeated by a vote of the council members.

Thereafter, on May 17, 1966, appellee filed a quiet title action against the appellants and the City of Mount Vernon seeking to quiet title to this strip of land. On July 19, 1966, the appellee and appellants reached an agreement whereby appellee agreed to dismiss his quiet title action and agreed to recognize the easement for appellants' use. In consideration therefor, appellants agreed to pay appellee $100.00 in settlement of all differences between the parties and to hire the D. K. Parker Construction Company to grade the land to certain specifications as agreed to, surface the easement with rock suitable for automobile traffic, and to sod the embankment on appellee's side of the easement. This agreement was reduced to writing and executed by the parties.

The D. K. Parker Construction Company began work on July 22, 1966, to grade the easement in accordance with the agreement between the parties. Thereafter, the Street Commissioner of the City of Mount Vernon received complaints that the easement embankment was eroding and that mud was accumulating in the street. On August 5, 1966, the Street Commissioner had the grade level of the easement lowered by a bulldozer to prevent further erosion. The appellants

requested the bulldozer operator to place the dirt, which was being removed in order to lower the alleyway, upon their adjoining land. When appellee arrived, he called the city attorney and had the work stopped.

Appellee contacted Mr. Parker of the Parker Construction Company and told him to complete the job as required in the contract. Mr. Parker expressed doubt that appellants would pay for the additional cost to raise the grade level back to the height stated in the contract. Appellee responded by assuring Mr. Parker that if appellants refused to pay, appellee would reimburse him for the work. When Mr. Parker sent appellants a bill for the work done under the contract, appellants paid a portion, but refused to pay for the regrading work required because of the city's lowering of the grade. Appellee paid the amount owed and took an assignment thereof from Mr. Parker. Appellee then brought this cause of action against the appellants.

On appeal to this court, the appellants contend that the decision of the trial court on pleading paragraph I of appellee's complaint is not sustained by sufficient evidence and is contrary to law. First, appellants allege there was a fatal variance between the allegations of paragraph I and the evidence offered in support thereof by the appellee. Appellants insist that paragraph I states a cause of action for a debt owed, while the evidence offered showed a breach of contract. Secondly, appellants allege that the evidence presented on paragraph I was insufficient to support the allegations thereof, thus the decision for appellee was contrary to law.

We cannot agree with either of these contentions. First, an examination of the complaint reveals that the first pleading paragraph alleged facts stating a cause of action for money due by reason of the breach of a written contract. The transcript contains ample evidence establishing the formation of the contract, the breach thereof and the resulting damages. Thus, we fail to see where there is a variance between the pleading and the proof offered to substantiate it.

Concerning appellants' second contention that the judgment on paragraph I was contrary to law because there was insufficient evidence to support the court's decision, the law is well settled that on appeal, this court may consider only the evidence most favorable to the appellee together with all reasonable inferences to be drawn therefrom, and it is only where the evidence is without conflict, and can lead to but one conclusion, and the jury or trial court has reached an opposite conclusion, that the verdict of the jury or the decision of the trial court will be set aside on the grounds that it is contrary to law. *Hinds, Executor, etc.,* v. *McNair, et al.* (1955), 235 Ind. 34, 41, 129 N. E. 2d 553, (Rehearing Denied) ; *Pokraka* v. *Lummus* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669, (Rehearing Denied) ; *Schabler* v. *Indianapolis Morris Plan Corp.* (1968), 142 Ind. App. 319, 234 N. E. 2d 655, 657, (Rehearing Denied).

After having reviewed the evidence, we cannot say it was without conflict. In considering the evidence most favorable to the appellee, we find there was ample evidence to support the trial court's decision, and that decision, therefore, is not contrary to law.

Appellants next allege that the amount of damages recovered under paragraph II of appellee's complaint is not sustained by sufficient evidence and that the award of any damages was contrary to law. Appellee's claim for damages was based upon the value of the dirt removed from appellee's property and placed on appellant's property. Appellants claim that no evidence was offered as to the exact amount of dirt taken from appellee's property and thus the court's award of damages was not based upon sufficient evidence.

In the case of *Kostas* v. *Zaracostas et al* (1947), 118 Ind. App. 425, 432, 75 N. E. 2d 423, (Transfer Denied), this court stated:.

"The law is well settled that this court will not disturb the decision of the trial court as to the amount of recovery

where the evidence is conflicting, and there is evidence to support the judgment. *Trammel* v. *Briant* (1900), 25 Ind. App. 375, 58 N. E. 206; *Chmielewski's Estate* v. *Chmielewski* (1936), 102 Ind. App. 20, 200 N. E. 747; *Chicago Furniture Co.* v. *Cronk* (1905), 35 Ind. App. 591, 74 N. E. 627." *Sikora* v. *Barney et al.* (1965), 138 Ind. App. 686, 207 N. E. 2d 846, (Transfer Denied) ; *Pelkey, Admrx. etc.* v. *Strom* (1963), 135 Ind. App. 163, 187 N. E. 2d 753, (Transfer Denied) ; *Miller, et al.* v. *Long* (1956), 126 Ind. App. 482, 131 N. E. 2d 348, 132 N. E. 2d 272, (Transfer Denied)."

The record now before us reveals testimony by Mr. Parker that he estimated 35 cubic yards of topsoil and 65 cubic yards of common fill dirt were removed by the city and that the value of common fill dirt was 20 cents per cubic yard. Also, appellee testified that topsoil had a value of $1.75 to $2.25 per cubic yard. Thus there is evidence in the record to support the trial court's award of damages for the dirt removed from appellee's land.

The appellants also allege that the dirt removed by the city and placed on appellants' property was taken from a public easement across appellee's land. Appellants admit, however, that the dirt in a public alley belongs to the owner of the underlying fee; however, appellants argue that appellee relinquished his right and title to this dirt by not demanding that it be put back on his land, and having therefore abandoned it, he cannot demand that appellants pay for its value.

This contention of appellants is unsupported by the evidence. First, the evidence shows that at the May 2, 1966, meeting of the City Council of Mount Vernon the city did not adopt a resolution to open the easement as a public alley. Secondly, there is no evidence to indicate that appellee relinquished his right to the dirt placed on appellants' land. To the contrary, there was testimony by the Street Commissioner that appellee demanded that the dirt be put back on his property.

The appellants next contend that the court's decision requiring appellants to repair and maintain the embankment is contrary to law and not sustained by the evidence. Appellants first allege that the trial court was without jurisdiction to issue a decree of mandatory injunction or to require specific performance of the terms of the contract granting the easement to appellants, in that the third paragraph of appellee's complaint did not allege the elements of either of these remedies or pray for either of these remedies.

Pleading paragraph III of the complaint alleges, in substance, that the land of the defendants is lower than the easement; that defendants have removed all sod and vegetation from the bank; that erosion is occurring with each rain; that as the owners of the dominant estate the defendants are required to keep and maintain the easement, and the plaintiff has no adequate remedy at law. The prayer of the third pleading paragraph reads in part as follows:

"WHEREFORE, the plaintiff prays for a judgment construing the agreement between the parties and requiring the defendants to provide proper lateral support to the embankment on their property to protect said easement from damage by erosion and protect the grade thereof and the surface thereof, and for all other proper relief."

Appellants' argument that the jurisdiction of the trial court to render judgment on pleading paragraph III of the complaint was never invoked by the pleading, that the relief granted was never prayed for, and that the first time such relief was anticipated was upon the rendering of final judgment, is, in our opinion, spurious and without merit.

This court stated in the case of *Pittman-Rice Coal Co.* v. *Hansen* (1947), 117 Ind. App. 508, 515, 72 N. E. 2d 364, (Transfer Denied):

"The theory of a complaint must be determined by its leading allegations. *Armstrong* v. *Illinois Bankers Life Assn.* (1940), 217 Ind. 601, 29 N. E. (2d) 415, 29 N. E. (2d) 953,

131 A. L. R. 769." *Bodine* v. *Justice* (1949), 119 Ind. App. 393, 85 N. E. 2d 504, (Transfer Denied); *State ex rel. Lawson* v. *Warren Br. Roads Co.* (1945), 115 Ind. App. 452, 59 N. E. 2d 912.

The Supreme Court in *Loy* v. *Hurst et al.* (1962), 243 Ind. 23, 27, 182 N. E. 2d 423, stated:

"We recognize the rule that the jurisdiction of a court to render a particular judgment must be determined from the allegations of the complaint. 7 I.L.E., *Courts,* § 6, p. 414."

The appellants also allege that no evidence was presented on which the trial court could have granted a mandatory injunction or specific performance. To the contrary, the evidence in the record included photographs of the area; there was testimony that the objective of the parties during the negotiations preceding the agreement between the parties was to arrive at a grade which would not unduly damage appellee; there was evidence that considerable erosion had occurred since the easement had been graded; the appellant Clayton Lynch testified the surface of the easement was eroding, and, the trial judge, with the consent of the parties, visited and viewed the premises. Under this state of the record, we cannot say that there was an absence of evidence to support the trial court's judgment requiring the appellants to maintain the easement.

Concerning the matter of the trial court's jurisdiction to grant the affirmative relief as prayed for in pleading paragraph III of the complaint, the general rule is that equity has jurisdiction to enjoin a continuing injury, which otherwise would result in the bringing of multiple successive actions at law. *Vandalia Coal Co.* v. *Lawson* (1909), 43 Ind. App. 226, 87 N. E. 47; *Harris* v. *Krekler* (1943), 113 Ind. App 190, 46 N. E. 2d 267, (Transfer Denied); 12 I. L. E., *Equity,* § 8, p. 278.

When the subject matter of the action involves the obstruction of an easement of a continuing nature, it is proper for

the court to give injunctive relief. *Chamberlin* v. *Myers* (1918), 68 Ind. App. 342, 120 N. E. 600.

Where the obstructions are of a permanent and continuous nature and the damages for each day's obstruction are insignificant, the remedy of successive actions at law for such damages is inadequate, and equity will interpose by injunction on the ground that the injury is irreparable. 25 Am. Jur. 2d, *Easements and Licensees,* Sec. 120.

Moreover, the relief afforded by equity need not be confined to preventive measures, but may be extended to compel affirmative action by the issuance of a mandatory injunction when necessary. 25 Am. Jur. 2d, *Easements and Licenses.* Sec. 120. *Anastaplo* v. *Radford* (Ill. 1958), 14 Ill. 2d 526, 153 N. E. 2d 37.

When a bill contains a prayer for general as well as special relief, the court may *mould the decree to meet the case made in the record. Spivey* v. *Frazee* (1856), 7 Ind. 661; *Newton* v. *Board of Trustees for Vincennes University* (1968), 142 Ind. App. 391, 235 N. E. 2d 84.

The allegations of the third pleading paragraph of his complaint, together with the evidence presented in support thereof, clearly bring appellee within the ambit of the above-cited authorities, by establishing a continuing injury to the appellee, justifying the affirmative relief accorded him by the trial court.

Concerning the matter of the duty of the appellants to maintain the easement, the appellants argue that no affirmative relief should have been granted by the court, requiring appellants to maintain the easement, because the appellants didn't "agree" to maintain it, and there is no duty imposed by law upon the appellants to maintain the easement.

The appellants state that this is a case of first impression in Indiana, as to whether or not the owner of the dominant estate has a legal *duty* to repair and maintain an easement, as distinguished from the right to repair and maintain. The

appellee agrees that no Indiana case has been found that has directly decided this issue.

However, our Supreme Court decided a similar issue in the case of *Dudgeon* v. *Bronson* (1902), 159 Ind. 562, 64 N. E. 910, (Rehearing Denied), wherein the dominant owner of a way of necessity sued to widen the easement. The issue of maintaining the way was not directly involved, but the court, in its opinion, quoted with approval the following language from *Holmes* v. *Seely,* 19 Wend. 507, 510:

> "The grantee is bound to keep the way in repair, and is not permitted to go *extra viam,* as a traveler on *a public highway is* bound to do . . ."

This issue has been decided in a number of other jurisdictions. In *Nixon* v. *Welch* (1946), 238 Iowa 34, 24 NW 2d 476, 169 A. L. R. 1141, the plaintiff sued to establish the validity of a drainage easement across the defendant's land. The evidence showed that the easement had gradually become filled up by natural causes. The court held that the easement was valid, and in discussing the cost of cleaning out the drainage ditch, the court said:

> "There is no showing by the plaintiff that the open ditch would benefit the Welch (defendant) land. In Plaintiff's original petition there was no prayer that the owner of the Welch land clean out the ditch and no prayer that the cleaning out of the ditch be done at the expense of Verna Welch. The prayer was merely for a mandatory injunction requiring Verna R. Welch to permit the cleaning out of the ditch. In a subsequent reply plaintiffs alleged their willingness to pay their 'proportionate share of the expense of such clean out'. There was no evidence upon which we could make any fair apportionment. Ordinarily the owner of an easement across the land of another has the duty to repair the easement when he is the only party benefitted by the easement.
>
> "It is our holding that the entire cost of the cleaning out of the ditch on the Welch land be borne by the plaintiffs."

In *Bowman* v. *Bradley,* (1928), 127 Oregon 45, 270 P. 919, the plaintiff was the owner of a drainage easement across the

defendant's land, but the easement had not been maintained, and the defendant filled it in. The plaintiff sued for damages caused by flooding of his land and for a mandatory injunction to compel the defendant to reopen the ditch. The court held that the plaintiff had the duty to keep the ditch in repair, and a mandatory injunction was issued to compel the defendant to reopen the ditch, and to compel the plaintiff thereafter to keep it in repair, and the plaintiff was ordered to replace an ineffective flume box and drop box with one sufficient to carry off the water, so as not to cause damage to the land of the servient owner.

The general rule is stated in 28 C. J. S., *Easements,* § 94, as follows:

"Where the easement is used and enjoyed for the benefit of the dominant estate alone, the owner of the servient estate is under no obligation to make repairs, the rule being that he who uses the easement must keep it in proper condition so that no unnecessary damage will result to the servient estate from its use, unless there is a special agreement or prescriptive right to the contrary."

In *Lamb* v. *Lamb* (1919), 177 N. C. 150, 98 S. E. 307, the defendant was the owner of a drainage easement across the land of plaintiff. The ditch was not kept in proper repair, and plaintiff sued for damages caused by flooding of his land. The court held that the defendant had the duty to keep the ditch in repair, and plaintiff was entitled to recover damages as a result of the ditch not being kept in repair.

To the same effect, see: *Richardson v. Kier* (1887), 34 Cal. 63, 91 Am. Dec. 681; *Settlers Irrig. Dist.* v. *Cruzen* (1927), 43 Idaho 736, 254 P. 1052.

It has been held that when the dominant tenant and servient tenant both use an easement, the court may apportion the cost of repairs in proportion to the usage by each party. *Bina* v. *Bina* (1931), 213 Iowa 432, 239 N. W. 68, 78 A. L. R. 1216.

The general rule is also set forth in *Restatement Servitudes,* § 485 (b), p. 3024, as follows:

"If the language of a conveyance creating an easement is so indefinite as not clearly to provide for a duty to repair, the inference to be drawn is that such duty as exists is upon the owner of the easement."

The general rule is also stated in *II Thompson on Real Property,* Permanent Edition, Section 679, at page 349, as follows:

". . . if the character of the easement is such that a failure to keep it in repair will result in injury to the servient estate or to third persons, the owner of the easement will be liable for any injury caused by such failure. A grant of a right of way implies no condition or covenant that the grantee shall keep it in repair. As between the owner of the easement and the owner of the servient estate the right and duty of repairing belong wholly to the former, in the absence of any agreement by the latter. The owner of the dominant tenement may be liable for injuries occasioned by his neglect to repair, and in this way he may be considered as bound to make the necessary repairs of the subject of the easement; but it is held generally, in the absence of a contract stipulation or prescriptive right to the contrary, that the owner of the easement is liable for the costs of maintenance and repairs where the easement exists and is used and enjoyed for the benefit of the dominant estate alone. Generally, the owner of an easement or right of way over the lands of another must maintain it in a state of good repair and efficiency so that no unnecessary damage will result from its use to the servient estate."

In this case, the trial judge, after hearing all of the evidence, and viewing the premises with the consent of the parties, concluded that the easement was created for the benefit of the appellants, and as the owners of the dominant estate the appellants had the duty to keep the surface and banks of the easement in a proper state of repair. There was ample evidence that erosion was already taking place, and the court very properly found that appellee was being damaged and would suffer continuing damage unless appellants maintained

the easement in a proper state of repair, and entered judgment accordingly.

The appellants next contend that the easement was a public alley, that the City of Mount Vernon has exclusive jurisdiction over the alley, and thus any action for maintenance thereof lies against the city. This argument is unfounded and not supported by the record. To the contrary, the record clearly shows that on May 2, 1966, the City Council of Mount Vernon failed to adopt a resolution to open this strip as a public alley. It has not been alleged that the City Council has at any time subsequent to May 2, 1966, opened this strip of land for a public alley.

The appellants next contend that appellee is estopped from maintaining the present action because he had previously dismissed, with prejudice, a cause of action between himself, the appellants herein, and the City of Mount Vernon, which was an action to quiet title to the strip of land involved in the present controversy. This argument is without merit for several reasons. First, neither the issues nor the parties to the two actions are the same.

In the case of *Louisville, etc., R. Co.* v. *Linton* (1909), 43 Ind. App. 709, 714, 88 N. E. 532, this court succinctly stated:

> ". . . It is elementary that a judgment in order to constitute an estoppel must have been between the same parties, or their privies; the issue must have been the same; the parties must have sued or defended in the same right, and the judgment must have been on the merits, and mutually binding. *Kitts* v. *Willson* (1894), 140 Ind. 604; *Smith* v. *Smith* (1905), 35 Ind. App. 610, and authorities cited."

Secondly, this argument is not well taken because of the fact that the appellee dismissed the prior lawsuit, as an accommodation to the appellants, as consideration for the contract between the appellants and appellee establishing the area in question as a private easement for the benefit of the appel-

lants. It is the breach of that contract by the appellants which occasioned this action.

Lastly, the appellants allege the court erred in ordering the judgment entry approved by the court on October 17, 1967, to be spread of record as of September 22, 1967. They complain that the appellants' rights were prejudiced in that the period for filing their motion for new trial was reduced from thirty days to five days.

In view of the fact that the motion for new trial and the memorandum in support thereof occupies 59 pages in the transcript, appears to raise all available alleged errors, and was in fact filed within the time allowed by statute, we cannot say that appellants were prejudiced by the court's action. If error was committed by the court, it was harmless to the appellants, and therefore not cause for reversal.

In considering the entire record, we believe the case was fully and fairly tried and that the rights of the appellants have not been prejudicially affected by any error in the proceedings. The judgment of the trial court should, therefore, be affirmed.

Judgment affirmed.

NOTE.—Reported in 263 N. E. 2d 176.